# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

PETRO DERAN PUGH,                    *
                                     *
        Petitioner,                  *
                                     *
vs.                                  *  CIVIL ACTION NO. 17-00284-JB-B
                                     *
KARLA WALKER JONES,                  *
                                     *
        Respondent.                  *

## REPORT AND RECOMMENDATION

Petro Deran Pugh, a state inmate in the custody of Respondent,
has petitioned this Court for federal habeas corpus relief pursuant
to 28 U.S.C. § 2254. (Doc. 7). The petition has been referred to
the undersigned Magistrate Judge for a report and recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 72(a)(2)(R), and
Rule 8 of the Rules Governing Section 2254 Cases. The undersigned
has conducted a careful review of the record and finds that no
evidentiary hearing is required to resolve this case.[1] Kelley v.
Secretary for the Dep't of Corrs., 377 F.3d 1317 (11th Cir. 2004).

---

[1] Because Pugh filed his federal habeas petition after April 24,
1996, this case is governed by the Antiterrorism and Effective
Death Penalty Act ("AEDPA"). "AEDPA expressly limits the extent
to which hearings are permissible, not merely the extent to which
they are required." Kelley v. Secretary for the Dep't of Corrs.,
377 F.3d 1317, 1337 (11th Cir. 2004). Pugh has failed to establish
that an evidentiary hearing is warranted in this case. Birt v.
Montgomery, 725 F.2d 587, 591 (11th Cir. 1984) (en banc) ("The
burden is on the petitioner . . . to establish the need for an
evidentiary hearing.").

Having carefully considered Pugh's petition and Respondent's answer (Doc. 13), the undersigned finds that Pugh's petition contains claims that are procedurally defaulted or meritless. Accordingly, it is **RECOMMENDED** that Pugh's habeas petition be **DISMISSED**; that judgment be entered in favor of Respondent and against Petitioner, Petro Deran Pugh, pursuant to 28 U.S.C. § 2244(d); and that any motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be denied as Pugh is not entitled to the issuance of a certificate of appealability, nor is he entitled to appeal *in forma pauperis*.

## I.   BACKGROUND FACTS

On October 7, 2013, Pugh pled guilty, pursuant to a plea agreement, to enticement of a child for immoral purposes, in violation of Ala. Code § 13A-6-69, in the Circuit Court of Clarke County, Alabama. (Docs. 7 at 2; 13 at 2; 13-1 at 46-55). Based on his plea, the court sentenced Pugh to twelve (12) years imprisonment, with 265 days credit for the time he had already served. (Docs. 7 at 12; 13-1 at 53).

Pugh did not directly appeal his conviction and sentence. (Doc. 7 at 3). Instead, on August 14, 2014, he filed a Rule 32 petition for post-conviction relief and a motion to proceed *in forma pauperis*.[2]  (Docs. 7 at 4; 13-1 at 6-38). In his petition,

---

[2] Pursuant to the mailbox rule, a prisoner's petition is deemed filed on the date it is delivered to prison officials for mailing,

Pugh advanced various arguments, described in the State's response as follows:

> In the instant petition, the Petitioner raises the following allegations: (1) conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea; (2) conviction obtained by use of a coerced confession; (3) denial of effective assistance of counsel; and (4) newly discovered material facts exist which requires that the conviction or sentence be vacated, because the facts were not known by the Petitioner or his counsel at the time of sentencing.

(Doc. 13-1 at 39). The State argued that each of Pugh's claims was due to be dismissed because he failed to state claims upon which relief could be granted. (Id. at 40-43).

On September 11, 2014, without ruling on Pugh's motion to proceed *in forma pauperis*, the Circuit Court of Clarke County denied Pugh's petition. (Doc. 13-1 at 56). On September 20, 2014, Pugh appealed the dismissal of his Rule 32 petition to the Alabama Court of Criminal Appeals. (Id. at 62). On March 19, 2015, the Alabama Court of Criminal Appeals remanded the case to the circuit court "to make specific findings of fact as to whether a motion for *in forma pauperis* was filed and granted or whether Pugh paid

---

absent contrary evidence. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). Here, while Pugh lists the date of the execution of his Rule 32 petition as August 12, 2014 (Docs. 7 at 4; 13-1 at 16), he states, in his handwritten Certificate of Service, that his petition was placed in the prison mailing system "on or about" August 14, 2014. (Doc. 13-1 at 37). Accordingly, the Court has utilized this date in examining the timeliness of his petition, *infra*.

the filing fee." (Id. at 70). The appeals court observed that because the circuit court failed to receive a filing fee from Pugh or grant his motion to proceed *in forma pauperis,* prior to issuing its judgment, the court's order dated September 11, 2014, was void. (Id.).

On June 8, 2015, the Circuit Court of Clarke County determined that Pugh had in fact filed a motion to proceed *in forma pauperis*, and granted his motion. (Id.). On April 14, 2016, the Court issued an order again denying Pugh's Rule 32 petition. (Doc. 13-1 at 73). Pugh appealed the dismissal of his petition. (Id. at 74-75). The Alabama Court of Criminal Appeals described the issues raised on appeal as follows:

> On appeal, Pugh argues that (1) his sentence was excessive and illegal because he was convicted of a Class C felony that was enhanced by his 4 prior felonies and the sentence was not mandatory. He further submits that (2) his prior convictions were not properly proven by the State. He also argues that (3) his plea is void because the judge failed to sign the agreement, and (4) it was involuntary because he was not informed by his counsel that he could not get good time credit. He contends that (5) his counsel was ineffective for allowing him to plead to a straight 12-year sentence and failing to inform him that he could not get good-time credit. Finally, he alleges that (6) the court abused its discretion by not reading the statute of conviction or the indictment in open court.

(Doc. 13-4 at 3-4). On December 9, 2016, the Alabama Court of Criminal Appeals held that only Pugh's claim that his plea was involuntary because his counsel did not inform him that he could not receive good time credit, and his claim of ineffective

4

assistance of counsel could be considered because the remainder of his claims were not raised in his Rule 32 petition before the circuit court. (Id. at 4). In affirming the denial of Pugh's Rule 32 petition, the appeals court held that Pugh failed to properly plead his ineffective assistance of counsel claim because he did not plead the claim with specificity. (Id. at 4-5). On December 21, 2016, Pugh filed an application for rehearing, which was overruled by the Alabama Court of Criminal Appeals on January 6, 2017. (Docs. 13-5, 13-6). Pugh then filed a petition for writ of certiorari with the Alabama Supreme Court on January 17, 2017, which was denied on March 10, 2017. (Docs. 13-7, 13-8). The Alabama Court of Criminal Appeals then issued a certificate of judgment on March 10, 2017. (Doc. 13-9).

Pugh initially filed a petition for writ of habeas corpus with the United States District Court for the Middle District of Alabama on May 15, 2017. (Doc. 5 at 16). That court transferred Pugh's petition to this Court on June 20, 2017. (Id. at 47-51). On June 23, 2017, the Court entered an order directing Pugh to re-file his petition and motion to proceed without prepayment of fees on the Court's required forms by July 24, 2017. (Doc. 6). On June 28, 2017, Pugh refiled his petition and motion to proceed without

prepayment of fees.[3] (Docs. 7, 8). In his petition, Pugh raises four grounds for relief: (1) his sentence is illegal because he pled guilty to enticing a child for immoral purposes, but his alleged victim was over the age of twelve (12); (2) his trial counsel, Tara Armistead, was ineffective when she advised him that he would receive "good time" credit and could be considered for parole; (3) his plea agreement was void because the trial judge failed to sign the agreement; and (4) the trial court failed to produce any certified evidence of his prior felony convictions. (Doc. 7 at 6-8).

In Respondent's brief in opposition to Pugh's petition, Respondent asserts that Pugh's petition is untimely. (Doc. 13 at 11). According to Respondent, Pugh's conviction became final on November 18, 2013; the statute of limitations was tolled by Pugh's timely filing of his Rule 32 petition; and the limitations period resumed on March 10, 2017, when the Alabama Court of Criminal Appeals issued its certificate of judgment, and expired on June 14, 2017. Respondent argues that because Pugh's amended habeas petition was not filed until June 28, 2017, it is untimely, and Pugh is not entitled to equitable tolling. (Id. at 11-12). Respondent further argues that, notwithstanding the alleged

---

[3] Pugh's motion to proceed without prepayment of fees was denied, and he was ordered to pay the $5.00 statutory filing fee. (Doc. 9). Pugh paid the filing fee on July 17, 2017. (Doc. 10).

untimeliness of Pugh's petition, his claims fail as a matter of law. Respondent alleges that Pugh's claims regarding illegal sentence, void plea agreement, and prior felony convictions are due to be dismissed because they are unexhausted state law claims. (Id. at 17-19). Respondent further argues that Pugh's ineffective assistance of counsel claim should fail because he has failed to establish that his counsel rendered service that fell below the constitutional standard established by Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). (Id. at 19-22).

For the reasons set forth herein, the undersigned **RECOMMENDS** that Pugh's petition be **DISMISSED**.

## II. ANALYSIS

### a. Timeliness of Petition

Pursuant to 28 U.S.C. § 2244(d)(1), as amended by the April 24, 1996, enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996, § 101 (Supp. II 1997) ("AEDPA"), a state prisoner seeking a federal habeas corpus remedy must file his federal petition within one year of the "conclusion of direct review or the expiration of the time for seeking such review." The Act provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244 (d).

As noted above, the AEDPA imposes a one-year limitations period on § 2254 actions and includes several commencement dates, one of which is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); see also Pugh v. Smith, 465 F.3d 1295, 1298 (11th Cir. 2006). The conviction at issue in the instant petition occurred on October 7, 2013, when

Pugh pled guilty to, and was sentenced for, enticement of a child for immoral purposes. Since Pugh did not file a direct appeal of his conviction, it became final forty-two (42) days after his sentence was pronounced, or on November 18, 2013. See Ala. R. App. P. 4(b)(1). Accordingly, the statute of limitations for Pugh to file a federal habeas petition began running on November 18, 2013 and, in the absence of a tolling event, expired one year later, on November 18, 2014.

Section 2244(d)(2) of the AEDPA provides for the tolling of the limitations period pending state court review of a properly filed application for post-conviction relief. See In re Hill, 437 F.3d 1080, 1083 (11th Cir. 2006). However, the law is clear that petitions "filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled." Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000); see also Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) ("A state court filing after the federal habeas filing deadline does not revive it."); Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) ("The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a "properly filed" post-conviction application actually pending in state court.").

Here, the statute of limitations was tolled when Pugh filed his Rule 32 petition on August 14, 2014. At the time of he filed

his Rule 32 petition, the limitations period, which commenced on November 18, 2013, had run for 269 days, with 96 days remaining. The tolling period lasted for the duration of Pugh's proceedings before the state courts, including his appeals. However, tolling ended, and the limitations period began to run again, on March 10, 2017, the date on which the Alabama Court of Criminal Appeals issued a certificate of judgment regarding Pugh's Rule 32 petition. At that point, Pugh had 96 days from March 10, 2017, or until June 14, 2017, in which to file a federal habeas petition.

As noted *supra*, Pugh initially filed his habeas petition in the United States District Court for the Middle District of Alabama on May 15, 2017. This filing was within the limitations period. The Court in the Middle District transferred Pugh's petition to this Court on June 20, 2017, six days after the limitations period expired. On June 23, 2017, this Court ordered Pugh to re-file his petition on the Court's required forms by July 24, 2017. Pugh, in compliance with the Court's order dated June 23, 2017, re-filed his petition on June 28, 2017, fourteen days after the expiration of the AEDPA limitations period. Respondent argues that the filing with this Court was untimely.

Petitions for habeas corpus relief "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. §2242. Federal Rule of Civil Procedure 15(c)(1)(B) provides that an "amendment to a pleading relates back

to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." The relevant "occurrence" with respect to a habeas petition is the specific claim being asserted. <u>Mayle v. Felix</u>, 545 U.S. 644, 664 (2005).

In <u>Davenport v. United States</u>, the Eleventh Circuit held that, "for an untimely [habeas petition] to 'relate back' under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." <u>Davenport v. United States</u>, 217 F.3d 1341, 1344 (11th Cir. 2000) (citations omitted). "Instead, in order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" <u>Id.</u> (Citations omitted).

Here, Pugh's original petition, filed in the Middle District of Alabama, raised four grounds for relief: (1) "illegal sentence," based on his assertion that his victim was over the age of twelve (12); (2) ineffective assistance of counsel, based on his trial counsel's alleged advice that he could receive "good time" credit and parole consideration; (3) "void plea agreement" because the trial judge did not sign the plea agreement; and (4) "prior felony conviction," which is his assertion that the trial court never

produced evidence of his prior felony convictions. (Doc. 5 at 7-12). Pugh reiterated each of these claims, including his reasoning in his amended petition. (Doc. 7 at 6-8). Thus, Pugh's claims in his amended petition mirror those in his original petition. Each of the claims in his amended petition rely on the same facts and arise from the same occurrence as his initial petition; that is, the claims enumerated in both petitions stem from Pugh's guilty plea hearing and sentencing. As such, Pugh's amended petition relates back to the date of his original petition, May 15, 2017, such that the instant petition is timely.

**b. Pugh's Claims One, Three, and Four are Unexhausted.**

While Pugh's claims are timely, his claims alleging an illegal sentence, void plea agreement, and "prior felony conviction" should nevertheless be dismissed because Pugh failed to exhaust his remedies in state court. Before a federal court may grant habeas relief to a state prisoner, the prisoner must give state courts an opportunity to act on their claims before presenting those claims to a federal court in a habeas petition. O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 1731, 144 L. Ed. 2d 1 (1999). 28 U.S.C. § 2254 addresses the exhaustion principle in the following manner:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

. . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c) (1996).

"Section 2254(c) requires only that state prisoners give state courts a *fair* opportunity to act on their claims." O'Sullivan, 526 U.S. at 843, 119 S. Ct. at 1732 (emphasis in original). A habeas claim will be deemed exhausted when "it is fair to assume that further state proceedings would be useless." Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060, 103 L. Ed. 2d 380 (1989). This standard is satisfied when the federal claim has been "fairly presented" to the state's highest court. Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971). A claim is "fairly presented" when state courts were afforded "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding . . ." Id. at 276.

In discussing exhaustion, the Supreme Court explained that "state prisoners must give the state courts one full opportunity

to resolve any constitutional issues by invoking one complete round of the State's appellate review process." O'Sullivan, 526 U.S. at 845, 119 S. Ct. at 1732. A complete round of the state appellate process includes discretionary appellate review "when that review is part of the ordinary appellate review procedure in the State." Id. at 847, 119 S. Ct. at 1733. In Alabama, the established appellate review process includes appealing to the Alabama Court of Criminal appeals, filing an application for rehearing to the Alabama Court of Criminal Appeals, and applying for discretionary review by the Alabama Supreme Court. See Smith v. Jones, 256 F.3d 1135, 1140-41 (11th Cir. 2001); Ala. R. App. P. 4, 39, 40. Where an inmate fails to provide state courts "one full opportunity" to resolve constitutional issues prior to filing their federal habeas petition, their claims are considered unexhausted.

Because a federal court ordinarily may not grant habeas corpus relief when the petitioner has not exhausted available state remedies, "[i]f a petitioner fails to exhaust his state remedies, a district court must dismiss the petition without prejudice to allow for such exhaustion." Gore v. Crews, 720 F.3d 811, 815 (11th Cir. 2013). However, an unexhausted claim is procedurally defaulted if it is evident that any future attempts at exhaustion would be futile due to the existence of a state procedural bar. Id. at 816; see also McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has

failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar."). A federal court may review a procedurally defaulted claim only if the petitioner can show (1) cause for the procedural default in the state courts and prejudice flowing from the asserted federal violation, or (2) a fundamental miscarriage of justice will result if the federal claim is not considered on its merits. Bishop v. Warden, GDCP, 726 F.3d 1243, 1258 (11th Cir. 2013).

In the instant petition, Pugh challenges his conviction on four grounds. However, with the exception of his claim of ineffective assistance of counsel, Pugh did not raise his remaining claims in his Rule 32 petition. While Pugh raised claims of "prior felony conviction" and void plea agreement in his appellate brief to the Alabama Court of Criminal Appeals (Doc. 13-4 at 4), the appeals court refused to consider those claims because they were not initially raised in Pugh's Rule 32 petition. Further, Pugh's claim of an illegal sentence is being raised for the first time in his instant habeas petition. The fact that Pugh appealed the denial of his Rule 32 petition to the Alabama Court of Criminal Appeals and subsequently filed a writ of certiorari with the Alabama Supreme Court is inconsequential to the Court's determination, as the claims presented in the instant petition are not those raised in his Rule 32 petition, and the Alabama Court of

Criminal Appeals refused to consider on appeal those claims that were not raised in his Rule 32 petition.  (Id. at 3).  See English v. State, 10 So. 3d. 620, 621 (Ala. Crim. App. 2007)("it is well settled that [a]n appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition.").  Because Pugh's claims alleging an illegal sentence, void plea agreement, and "prior felony conviction" were not properly raised in the state courts, they are unexhausted, and any attempt to reassert them in state court would be futile, as a petition seeking review would be untimely since it would be outside the one-year limitations period provided by Ala. R. Crim. P. 32.2(c) and would be barred as an impermissible successive petition under Rule 32.2(b).  Accordingly, the claims are procedurally defaulted, and Pugh has failed to demonstrate  cause and prejudice for the default or that a miscarriage of justice would  occur without federal review.

### c. Ineffective Assistance of Counsel

Pugh's sole claim that is not procedurally barred is his assertion that his trial counsel rendered constitutionally ineffective assistance.  The Court's review of Pugh's petition is governed by the AEDPA, where "the role of the federal court . . . is strictly limited."  Jones v. Walker, 496 F.3d 1216, 1226 (11th Cir. 2007).  Specifically, 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

Thus, a federal court may grant habeas relief only if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the way the United States Supreme Court did on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); Price v. Vincent, 538 U.S. 634, 641, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003) (noting that a federal court will disturb a state court's habeas decision on the merits only if the petitioner shows that the decision was contrary to, or involved

an unreasonable application of, clearly established constitutional law as determined by the United States or if the decision rested upon an unreasonable factual determination).

"[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011). In other words, "if some fair-minded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied . . . [T]he deference due is heavy and purposely presents a daunting hurdle for a habeas petitioner to clear." Loggins v. Thomas, 654 F.3d 1204, 1220 (11th Cir. 2011); see also Greene v. Fisher, 565 U.S. 34, 132 S. Ct. 38, 181 L. Ed. 2d 336 (2011) (noting that the AEDPA standard is purposely onerous because "federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice system, and not as a means of error correction.") (citations and internal quotation marks omitted); Cullen v. Pinholster, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (noting that the AEDPA standard "is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.") (citations and internal quotation marks omitted).

Accordingly, in evaluating Pugh's § 2254 petition, the Court takes great care to abide by the structure that "[a] federal court may not grant habeas relief on a claim a state court has rejected on the merits simply because the state court held a view different from its own." Hill v. Humphrey, 662 F.3d 1335, 1355 (11th Cir. 2011); see also Reese v. Secretary, Fla. Dep't of Corrs., 675 F.3d 1277, 1286 (11th Cir. 2012) ("This inquiry is different from determining whether we would decide de novo that the petitioner's claim had merit."). Having established the proper standard of review, the Court turns to Pugh's ineffective assistance of counsel claim.

The Sixth Amendment guarantees criminal defendants a right to reasonably effective legal assistance. Roe v. Flores-Ortega, 528 U.S. 470, 476, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). In Strickland v. Washington, the Supreme Court adopted a two-prong standard for evaluating claims of ineffective assistance of counsel. Strickland, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the requirements of this two-prong standard, a petitioner must establish (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of

reasonableness, id. at 687-88; and (2) that counsel's deficient performance prejudiced the petitioner by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694. Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim, courts applying the Strickland test "are free to dispose of ineffectiveness claims on either of [Strickland's] two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998).

In order to satisfy the "performance" prong of the Strickland test, a petitioner is required to show that his attorney's representation "fell below an objective standard of reasonableness[,]" which is measured by "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 668. That is, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. In considering such a claim, the court "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted). Thus, a petitioner has a difficult burden because, to be considered unreasonable, "the performance must be such that 'no competent counsel would have taken the action that

[the petitioner's] counsel did take." Ball v. United States, 271 Fed. Appx. 880, 883 (11th Cir. 2008).

In order to satisfy the "prejudice" prong of the Strickland test, a petitioner must show that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The petitioner "must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted). Further, it is not enough to merely show that the alleged errors affected the case in some imaginable way. Id. at 1293-94 ("[T]hat the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice.") (quoting Strickland, 46 U.S. at 693) (internal quotation marks omitted). Thus, "under the exacting rules and presumptions set forth in Strickland, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Wisdom v. Secretary, Dep't of Corrs., 578 F.3d 1227, 1248 (11th Cir. 2009) (citations omitted).

As noted, *supra*, Pugh's ineffective assistance of counsel claim stems from his assertion that Armistead, his trial counsel,

advised him that he would receive good time credit and parole consideration if he accepted a twelve-year sentence for his crime. (Doc. 7 at 8). At his guilty plea hearing, the Circuit Court of Clarke County engaged Pugh in a colloquy regarding his plea, whether he understood it, and whether he entered into it voluntarily:

THE COURT: Are you Petro Pugh?

MR. PUGH: Yes, sir.

THE COURT: You're here today, we have a case on this docket. My understanding is you and your attorney reached an agreement with the State of Alabama through the District Attorney's Office; is that right?

MR. PUGH: Yes, sir.

. . .

MS. ARMISTEAD: Judge, he is going to receive a twelve-year straight sentence. Credit for time he already served, and plead on the enticing charge, and the two rape charges will be dismissed.

. . .

THE COURT: Is that consistent with your understanding?

MR. PUGH: Yes, sir.

THE COURT: Mr. Pugh, you are here today, among other things, on case CC-12-212, in which you have been charged with the crime of Enticing a Child. Now, under Alabama law that is a Class C felony. Normally the range of punishment for that, if you were convicted, would be not less than a year and a day and not more than ten years imprisonment in State Penitentiary. However, in this case, the State of Alabama intends to offer evidence that you have in fact been convicted of two prior felony offenses.

What this does is enhance or change the range of punishment, so that the range of punishment now, if you were convicted or plead guilty in this case, would be not less than ten years and not more than ninety-nine years imprisonment in the State penitentiary. You could be fined in an amount not to exceed Sixty Thousand Dollars.

Now, do you understand what you are charged with and do you also understand what the range of punishment could be?

MR. PUGH: Yes, sir.

THE COURT: Now, do you understand, Mr. Pugh, that you have the right to enter a plea of not guilty, and if you did that, you would force the State of Alabama to prove to a jury beyond a reasonable doubt that you were guilty of this charge. Do you understand that?

MR. PUGH: Yes, sir.

. . .

THE COURT: Let me show you a couple of forms, Mr. Pugh, one called Explanation of Rights, the other called Plea Agreement. Would you please look at those and tell me if they, in fact, contain your signature?

MR. PUGH: Yes, sir.

THE COURT: Now before you signed those, did you either read them or did you and Mrs. Armistead, your attorney, go over them together?

MR. PUGH: Yes, sir.

THE COURT: Do you understand them?

MR. PUGH: Yes, sir.

THE COURT: Did you sign them voluntarily?

MR. PUGH: Yes, sir.

THE COURT: All right. Mr. Pugh, to the charge of Enticing a Child, as charged in Case CC-12-212, how do you plead, guilty or not guilty?

MR. PUGH: Plead guilty from my best interest, yes, sir.

THE COURT: All right. We're going to come to that in just a second. You plead guilty or not guilty?

MR. PUGH: Guilty.

THE COURT: Okay. Plead guilty. IS that plea voluntary on your part, by that I mean did you do it on your own or did somebody force you to plead guilty?

MR. PUGH: No, sir. I did it on my own.

THE COURT: Nobody gave you anything other than this plea agreement –

MR. PUGH: Right.

THE COURT: -- to get you to plead guilty, is that right?

MR. PUGH: No, sir.

THE COURT: Are you pleading guilty, Mr. Pugh, because you believe that it is in your best interest to plead guilty?

MR. PUGH: Yes, sir.

(Doc. 13-1 at 47-51).

In addition to the record of Pugh's guilty plea, the Government submitted an affidavit from Armistead, Pugh's trial counsel, in opposition to his ineffective assistance claim. (Doc. 13-1 at 44-45). In it, Armistead states that she spoke with Pugh about his case on several occasions. (Id. at 44). She denies that she advised Pugh that he would be eligible for good time credit. (Id.). Armistead also states that Pugh indicated to her

24

that he understood his plea and was voluntarily entering into it.
(Id.).

The Alabama Court of Criminal Appeals, in summarily
dismissing Pugh's appeal, concluded that:

> A review of the guilty plea proceedings reveals that the
> facts surrounding his case indicated that Pugh asked his
> minor granddaughter to come into his bedroom by
> promising her a gift and then touched her and asked her
> to engage in sexual activity. Section 14-9-41(e), Ala.
> Code 1975, provides that "[n]o person may receive the
> benefits of correctional incentive time if he or she has
> been convicted of a criminal sex offense involving a
> child as defined in Section 15-20A-4(26)." The guilty
> plea proceedings show that Pugh was informed of his
> sentence, that the sentence had been agreed upon, and
> that he voluntarily and knowingly accepted his sentence.
> His bare allegation that he was not told that he could
> not receive incentive good time credit does not satisfy
> the specificity requirements of Rule 32, see Rule
> 32.6(b), Ala. R. Crimp. P. ("Each claim in the petition
> must contain a clear and specific statement of the
> grounds upon which relief is sought, including full
> disclosure of the factual basis of those grounds. A bare
> allegation that a constitutional right has been violated
> and mere conclusions of law shall not be sufficient to
> warrant any further proceedings") or the burden of proof
> requirements of Rule 32.3 ("The petitioner shall have
> the burden of pleading and proving by a preponderance of
> the evidence the facts necessary to entitle the
> petitioner to relief. The state shall have the burden of
> pleading any ground of preclusion, but once a ground of
> preclusion has been pleaded, the petitioner shall have
> the burden of disproving its existence by a
> preponderance of the evidence.").
>
> Pugh has failed to show that but for this alleged error
> he would not have pleaded guilty, but rather would have
> proceeded to trial and, thus, failed to meet the burden
> of pleading required by Strickland v. Washington, 466
> U.S. 668 (1984), and Rules 32.3 and 32.6(b). See, e.g.,
> Hyde v. State, 950 So. 2d 344, 355-356 (Ala. Crim. App.
> 2006).

(Doc. 13-4 at 4-5).

Similarly, in the instant petition, beyond the bare-bones explanation noted above, Pugh offers no other arguments in support of his claim.[4]  A review of Pugh's guilty plea hearing reflects that he willingly pled guilty to enticement of a child for immoral purposes.  He has neither alleged nor established that Armistead's representation fell below an objective standard of reasonableness, such that it would satisfy Strickland.  Further, there is nothing before the Court that suggests that Armistead's performance was so deficient that she was not functioning as the counsel guaranteed to Pugh under the Sixth Amendment.  See Strickland, 466 U.S. at 668.  Pugh has also failed to establish that there was a reasonable probability that, but for Armistead's alleged error, the result of his guilty plea hearing would have been different, or that he would have insisted on proceeding to trial.  Id. at 694.  This is particularly true given that Pugh was facing up to ninety-nine years had he gone to trial and been convicted.

Having reviewed the facts of this case, the undersigned cannot conclude the ruling of the Alabama Court of Criminal Appeals "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-

---

[4] Indeed, a review of the petition Pugh filed in the Middle District of Alabama, which includes a supporting brief, provided the Court with no greater insight into his ineffective assistance of counsel claim than his amended petition. (See Doc. 5 at 15-37).

minded disagreement." <u>Harrington</u>, 526 U.S. at 103. Accordingly, the undersigned finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, <u>see</u> 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law. <u>See</u> 28 U.S.C. § 2254(d)(1). Therefore, Pugh's claim that his constitutional rights were violated by his counsel's advice regarding his potential for good time credit and a parole consideration are without merit and should be denied.

### III.    CONCLUSION

Based on the foregoing, it is the recommendation of the undersigned Magistrate Judge that Pugh's petition for habeas corpus relief be denied, that this action be dismissed, and that judgment be entered in favor of the Respondent, and against the Petitioner, Petro Deran Pugh. It is further recommended that any motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be denied.

### <u>Notice of Right to File Objections</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

    **DONE** this **25th** day of **October, 2018.**

                        **/s/ SONJA F. BIVINS**
                    **UNITED STATES MAGISTRATE JUDGE**